**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PABLO SANCHEZ GARCIA,

                Plaintiff,

v.

WAYNE COUNTY, STEVENS, HOLMES, LOGAN, G. GOBLE, AND OTHER UNKNOWN OFFICERS,

                Defendants.

_____/

CIVIL CASE NO. 05-74221

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Before the Court are separate Motions for Summary Judgment by Defendant Goble and by Defendants Stevens, Holmes, Logan, and Wayne County (together, the "Wayne County Defendants") brought pursuant to Fed. R. Civ. P. 56(c). Goble and Wayne County claim that summary judgment is appropriate with respect to Plaintiff Garcia's claims of (1) gross negligence, (2) false imprisonment and (3) violation of the Fourth Amendment of the United States Constitution under 42 U.S.C. § 1983. Because the arrest and detention was supported by probable cause and was not unreasonable under the standard laid out by the Supreme Court, the Defendants' Motions for Summary Judgment are **GRANTED**.

## II. STATEMENT OF FACTS

On the night of September 9th, 2004, Plaintiff Pablo Sanchez Garcia was stopped by a Michigan State Police Trooper in Taylor, MI, for a misdemeanor traffic violation. Upon running a computer check on his name, the trooper found two warrants issued for Plaintiff for failure to pay child support, and subsequently arrested Plaintiff. (Plaintiff does not challenge either the stop or the arrest.)

Plaintiff was taken to a Wayne County Sheriff's Department substation and then to Wayne County Jail Division 1 in Detroit, and held overnight. The next day, September 10th, he met with a Friend of the Court Attorney who worked out a payment plan for the back child support and the warrants were removed from his name. As he was preparing to leave, Plaintiff was told by an unidentified deputy that he had a "hold" placed on his file and was detained further. Plaintiff asked that deputy and other unidentified deputies why he was being held and asked what they had a warrant for, but received no response.

That night, Michigan State Police Officer Andres picked up Plaintiff from the Wayne County Jail, informed him that he had a warrant outstanding in Newaygo County, and drove him to the Newaygo County Jail, some four hours from Detroit. Prior to his departure, Officer Andres requested Plaintiff's personal effects (including his driver's license) from Wayne County Jail but was told that the jail would not release them. During the trip, Plaintiff continued to protest his innocence, stating that he'd never been to Newaygo and he didn't have any outstanding warrants.

Upon arrival at the jail, Officer Andres and a Newaygo County Corrections Officer

investigated Plaintiff's claims of innocence by looking up a photograph of the suspect in the Newaygo County warrant and comparing Plaintiff's fingerprints to those in the warrant. After contacting the FBI and getting confirmation that the suspect in the warrant was a different person than Plaintiff, Newaygo County Jail officials prepared to release Plaintiff. They called the Wayne County Jail to arrange a pick-up, but the jail responded that they could not send a car until two days later. A Michigan State Trooper drove Plaintiff home, finally releasing him on the morning of September 11th.

The Newaygo warrant upon which Plaintiff was detained was for a failure to appear on a drunk driving conviction and listed a Pablo Garcia-Trejo, born 6/7/65, height of 5'4", weight of 165 pounds, brown hair, brown eyes, and contained a fraudulent social security number. The Wayne County inmate report listed Plaintiff as Pablo Sanchez Garcia, born 7/14/68, height of 5'5", weight of 140 pounds, black hair, brown eyes, and contained a valid social security number that matched his driver's license.

Defendant Holmes worked for the Wayne County Sheriff's Department substation, and admitted Plaintiff into the substation holding room on September 9th. Defendant Stevens worked for the Wayne County Jail and oversaw prisoner releases at the time of Plaintiff's release from the jail to Officer Andres on September 10th. Defendant Goble worked for the Wayne County Airport at their Central Communications Dispatch, and relayed the message from an unknown Wayne County Sheriff's Deputy to the Michigan State Police in Newaygo County regarding the pick-up of Plaintiff. Defendant Logan worked for the Wayne County Jail and took the call on the morning of September 11th from the Michigan State Police asking Wayne County Jail to send a car; Defendant Logan subsequently denied the request after running it by her supervisor.

Plaintiff has not identified the person or persons who placed the mistaken "hold" on his file, detained him after the discovery of the "hold", or arranged for the Michigan State Police in Newaygo County to be contacted.

Garcia filed this claim on November 3rd, 2005, against Defendants Stevens, Goble, Holmes, Logan, and Wayne County (originally Officer Andres was a Defendant, but he was subsequently dropped from the suit). After discovery was completed, the Wayne County Defendants and Defendant Goble separately moved for summary judgment on similar grounds.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Accordingly, in the instant case, this Court evaluates the Defendants' motions with the rule that it should defer to Plaintiff's factual account whenever that account clashes with the Defendants'. However, the Plaintiff "may not rest upon the mere allegations or denials of [his] pleading, but... must set forth specific facts showing that there is a genuine issue for trial" Anderson, 477 U.S. at 248 (internal quotations and citation omitted).

## IV. ANALYSIS

### A. The Fourth Amendment Claim

Plaintiff argues that because the information on the warrant matched only a few of Plaintiff's characteristics and because the Wayne County Jail deputies did not even attempt to confirm the identity on the warrant, they did not have probable cause to detain him. Therefore, according to Plaintiff, his detention was an unreasonable seizure under the Fourth Amendment of the United States Constitution. Defendants respond that the information on the Newaygo warrant was very similar to both the information on Plaintiff's other warrants and the information provided by Plaintiff himself. Therefore, according to Defendants, the Wayne County officers had probable cause to detain the Plaintiff and the detention was brief enough to be reasonable as a matter of law.

Under the Fourth Amendment of United States Constitution, which applies to the State of Michigan through its incorporation into the Fourteenth Amendment, the State must provide a "fair and reliable determination of probable cause as a condition for any significant pretrial personal restraint of liberty." Gerstein v. Pugh, 420 U.S. 103 (1975). An arrest and detention by the police qualifies as a significant restraint of liberty. Id. According to the Supreme Court, probable cause is a combination of "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed ... an offense." Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988). The suspect's actual innocence does not deny probable cause: "a valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." Id.

The Supreme Court and other courts in similar positions have found that police have probable cause to arrest even in cases involving mistaken identity when they have acted in good faith and there was a valid warrant. Those cases have further held that a limited detention under those circumstances does not rise to the level of a violation of the Fourth Amendment..

In <u>Baker v. McCollan</u>, the Supreme Court rejected the Fourth Amendment claim of a man arrested on a warrant meant for the man's brother (but bearing the man's name and identifying information) and detained for several days despite repeatedly protesting his innocence. <u>Baker v. McCollan</u>, 443 U.S. 137 (1979). The Court found that despite the relative ease of exoneration (the sheriff needed only to look at the photo of the suspect), the police were not "required by the Constitution to perform an error-free investigation." <u>Id</u>. at 146. The Court made it clear that mistaken identity does not need to be immediately rectified to avoid a Constitutional violation: "detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty ... without due process of law.' But we are quite certain that a detention of three days ... does not and could not amount to such a deprivation." <u>Id</u>. at 145.

Other courts have applied the rule in <u>Baker</u> that a period of erroneous detainment based on mistaken identity not exceeding three days is constitutionally permissible. See <u>Kennell v. Gates</u>, 215 F.3d 825, 828 (8th Cir. 2000) ("an unreasonable or negligent refusal to investigate claims of innocence or mistaken identity of an individual detained pursuant to facially-valid warrant for a few days does not amount to a constitutional violation"); <u>Brady v. Dill</u>, 187 F.3d 104, 109 (1st Cir. 1999) (holding that where plaintiff was arrested on a warrant bearing his name but containing a completely different physical description, "it would take circumstances much

more egregious ... for us to conclude that a weekend detention of approximately thirty-six hours, accompanied by a concerted effort on the part of the police to secure the detainee's release, resulted in a wrong of constitutional dimensions"); see also Bell v. Fox, 522 N.W.2d 869, 872 (Mich. App. 1994) (holding that "[l]ike plaintiff, we question why it took three days for her to be released when a simple fingerprint check would have disclose that she was the wrong person," but finding that defendant police officers had probable cause to arrest the plaintiff based on a warrant with plaintiff's name but a different date of birth).

Although it is true that "officers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone," they cannot be held liable, as Plaintiff argues, for "evidence which they failed to collect and, therefore, of which they were unaware." Ahlers v. Schebil, 188 F.3d 365, 372 (6th Cir. 1999). "The Sixth Circuit has rejected any such broad "duty to investigate" as an element of a police officer's probable cause determination." Watkins v. City of Highland Park, 232 F. Supp.2d 744, 756 (E.D. Mich. 2002) (citing Criss, 867 F.2d at 263).

And although it is also true that an egregious length of detention could be found unreasonable, the cases that survive summary judgment on this issue involve longer periods of incarceration than the 12-18 hours experienced by Plaintiff. See, e.g., Cannon v. Macon County, 1 F.3d 1558, 1564 (11th Cir. 1993) (plaintiff held for seven days on warrant matching only her name); Andujar v. City of Boston, 760 F. Supp. 238, 240 (D. Mass 1991) (twelve days of detainment).

Plaintiff's detention, though erroneous, was based on a case of mistaken identity

involving similar names on a valid warrant, and thus, under current caselaw, there was probable cause at the time of Plaintiff's arrest.[1] Because the arrest was supported by probable cause, and the length of detention was within the period held to be reasonable, the Court grants the Defendants' motions for summary judgment as to Plaintiff's claims of a constitutional violation.

### B. The State Law Claims of False Arrest and Imprisonment and Gross Negligence

Plaintiff also argues that the Defendants breached their duties to Plaintiff by acting indifferently and with disregard to Plaintiff's welfare, and therefore, regardless of the length of detention, the arrest qualifies as false arrest and imprisonment and gross negligence. The Defendants respond that: (a) the arrest was supported by probable cause; (b) in any event, they are immune from liability because Michigan's governmental tort liability law allows only suits against government employees who were the proximate cause of the plaintiff's injury; and (c) they are entitled to qualified immunity under Michigan common law.

Under Michigan law, to prevail in a false imprisonment action, the plaintiff "must show that his arrest was not legal, i.e., without probable cause." Adams v. Metiva, 31 F.3d 375, 388 (6th Cir. 1994). Therefore, a police officer, "acting in good faith with probable cause within the

---

[1] The Court notes, however, that several of the Defendants' claims are patently disingenuous. For example, Defendants argue that Plaintiff's arrest record, which has multiple drunk driving charges, supported the officers' conclusion that Plaintiff was the subject of the Newaygo drunk driving warrant. However, no evidence has been presented to suggest that anyone at the Wayne County Jail ever even looked at Plaintiff's arrest record. Even more insulting, the arrest record provided lists a drunk driving arrest in 2007 – absent a crystal ball, such an arrest would not have been "within the officer's knowledge" in 2004. Finally, the Defendants claim that for all of Plaintiff's questioning, Plaintiff never declared his innocence at the Wayne County Jail. This is a hollow semantic claim, however, as the reason Plaintiff did not declare his innocence to the deputies is because Plaintiff was never told what he was being held for.

scope of his authority, is not liable for false arrest or false imprisonment even though the arrest is subsequently found to be baseless." Blackman v. Cooper, 280 N.W.2d 620, 622 (Mich. App. 1979). As to a claim of gross negligence, under Michigan law "[t]he existence of probable cause has been held to negate any such allegation of gross negligence as a matter of law." Watkins, 232 F. Supp.2d at 754 (citing Bell, 522 N.W.2d Mich. App. at 871).

The Court's finding of probable cause, see supra Part IV-A, is dispositive on the state law claims as well. Where probable cause existed to arrest Plaintiff, "this serves to defeat Plaintiff's federal and state law claims alike on this point." Watkins, 232 F. Supp.2d at 753. Because Plaintiff's detention was supported by probable cause, his state law claims must fail.

Furthermore, the Michigan Governmental Tort Liability Act provides Michigan state employees with immunity from civil suits arising out of their employment so long as their conduct "does not amount to gross negligence" and it is not the "proximate cause" of the plaintiff's injury. Mich. Comp. L. 691.1407(2). Even if Plaintiff's evidence establishing the lack of probable cause was strong enough to go to a jury, the Defendants in this suit would be able to claim immunity under the Michigan Governmental Tort Liability Act, as the evidence presented does not establish any of the individual Defendants as the "proximate cause" of Plaintiff's detention and injury. The "proximate cause" of an injury has been held to mean "the most immediate, efficient, direct cause of injury." Robinson v. City of Detroit, 613 N.W.2d 307 (Mich. 2000). Defendant Holmes' interaction with Plaintiff preceded any mistaken arrest; Defendant Stevens merely released Plaintiff to Michigan State Police custody and had no direct interaction with Plaintiff; Defendant Goble relayed a message from Plaintiff's jailer to Michigan State Police; and Defendant Logan became involved only after Plaintiff was released from

custody.   None of these Defendants could be held to be the "most immediate, efficient, direct cause" of Plaintiff's injury, and therefore they would be entitled to governmental immunity under state law.

Because there was probable cause to support the detention and, in any event, the Defendants would be immune under Michigan law, the Court grants the Defendants' motion for summary judgment on the state law claims, as well.

## V.  CONCLUSION

For the reasons listed above, the Court **GRANTS** the Defendants' motions for summary judgment on Plaintiff's false arrest and imprisonment, gross negligence and Fourth Amendment claims.

**IT IS SO ORDERED.**

s/Marianne O. Battani  
MARIANNE O. BATTANI  
UNITED STATES DISTRICT JUDGE

DATED: September 27, 2007

## CERTIFICATE OF SERVICE

  Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                  s/Bernadette M. Thebolt
                  DEPUTY CLERK